1   STRANGE & CARPENTER
    Brian R. Strange (Cal. Bar. No. 103252)
2   LACounsel@earthlink.net
    12100 Wilshire Boulevard, Suite 1900
3   Los Angeles, CA 90025
    Telephone: (310) 207-5055
4   Facsimile: (310) 826-3210

5   LAW OFFICE OF JOSEPH MALLEY
    Joseph H. Malley (*pro hac vice* pending)
6   malleylaw@gmail.com
    1045 North Zang Blvd
7   Dallas, TX 75208
    Telephone: (214) 943-6100
8
9   Attorneys for Plaintiff and others similarly situated

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                     SAN JOSE DIVISION

13

14   MARK LANING; an individual, on behalf of        CASE No. **CV 12 − 00186**
     himself and others similarly situated,
15                                                    DEMAND FOR JURY TRIAL
                           Plaintiff,
16                                                    **CLASS ACTION COMPLAINT FOR
     v.                                               VIOLATIONS OF:**
17
     CARRIER IQ, INC., a Delaware Corporation
18   and PANTECH WIRELESS, INC., a Georgia        1.  ELECTRONIC COMMUNICATIONS
     Corporation,                                     PRIVACY ACT, 18 U.S.C. §2510;
19                                                2.  STORED COMMUNICATIONS ACT,
                                                      18 U.S.C. §2701;
20                         Defendants.            3.  CONSUMER LEGAL REMEDIES
                                                      ACT, ("CLRA") CALIFORNIA CIVIL
21                                                    CODE § 1750;
                                                  4.  UNFAIR COMPETITION LAW,
22                                                    CALIFORNIA BUSINESS AND
                                                      PROFESSIONS CODE §17200;
23                                                5.  CALIFORNIA'S COMPUTER CRIME
                                                      LAW, PENAL CODE §502;
24                                                6.  CALIFORNIA INVASION OF
                                                      PRIVACY ACT, PENAL CODE §630;
25                                                7.  SONG-BEVERLY WARRANTY ACT,
                                                      CALIFORNIA CIVIL CODE § 1792
26                                                8.  TEXAS DECEPTIVE TRADE
27                                                    PRACTICES ACT, TEXAS
28

BUSINESS AND COMMERCE CODE
§ 17.41
9. BREACH OF EXPRESS WARRANTY
10. BREACH OF IMPLIED WARRANTY
11. NEGLIGENCE
12. TRESPASS TO PERSONAL
PROPERTY/ CHATTELS
13. CONVERSION
14. UNJUST ENRICHMENT

1.    Plaintiff Mark Laning ("Plaintiff"), by and through his attorneys Strange & Carpenter, and Law Office of Joseph H. Malley, P.C., brings this action on behalf of himself and all others similarly situated, against Carrier IQ, Inc. ("Carrier IQ") and Pantech Wireless, Inc. ("Pantech") (collectively with Carrier IQ, "Defendants"). Plaintiff's allegations as to himself and his own actions, as set forth herein, are based upon his information and belief and personal knowledge. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d) as set forth below.

## I.    NATURE OF THE ACTION

2.    Plaintiff brings this consumer Class Action lawsuit pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3) on behalf of himself and a proposed class of similarly situated consumers ("Class Members") who purchased a Pantech mobile device on which Carrier IQ's software, "IQ Agent," was installed, without notice or consent of Plaintiff. This IQ Agent software was designed by Carrier IQ and customized or authorized for customization by Pantech in order to log and collect confidential, unencrypted user data including but not limited to (1) the contents of incoming text messages; (2) the URLs of websites visited by the user; and (3) the user's GPS coordinates; among other private and personally-identifying data. IQ Agent records this confidential data on a user's mobile device in an unencrypted format so that any device software or applications with log file permission can access and review it. Carrier IQ and Pantech also have access to this confidential data and can transmit the data from a user's mobile device to remote servers at any time via hidden "text requests" sent to a user's mobile device by Carrier IQ, Pantech or other authorized third parties. IQ Agent logs the hidden text requests and the confidential data silently so that a user

1  has no idea that data is being collected and transmitted. IQ Agent is preinstalled or

2  automatically updated on Pantech's mobile devices so that data logging begins the moment a

3  user purchases or turns on the device, without notice to or consent from the user. Because the

4  software is preinstalled or authorized for such software update by Pantech and runs as part of

5  the device operating system, data is automatically collected and can be transmitted via wireless

6  internet or other means, even if the device user has no carrier contract and the mobile device is

7  not connected to a mobile network. Finally, IQ Agent runs continuously and depletes resources

8  on the mobile device without notice to or authorization of the user, even when the mobile

9  device is not being used. The resources depleted by IQ Agent without notice or authorization

10  include (1) battery power; (2) device memory; (3) CPU; (4) bandwidth; and (5) text messages.

11  A user cannot stop the IQ Agent software from running under any circumstances, and a user is

12  unable to remove IQ Agent from the device without voiding the manufacturer's warranty.

13      3.    Because of Defendants' actions, Plaintiff and Class Members are victims of

14  unfair, deceptive, and unlawful business practices; wherein their privacy, financial interests,

15  and security rights, were violated by Carrier IQ and Pantech. Plaintiff and Class Members were

16  financially harmed by the Defendants when they purchased the Pantech mobile devices with IQ

17  Agent, and Plaintiff would not have purchased that devices if he had known that Defendants'

18  software could access, collect, transmit, analyze, store, and provide his confidential

19  unencrypted data to any device software or applications with log file permission without

20  Plaintiff's knowledge or permission. Plaintiff and Class Members were also harmed by Pantech

21  and Carrier IQ's unauthorized use of their mobile device battery power, device memory, CPU,

22  bandwidth and text messages.

23      4.    Pantech manufactured and sold to Plaintiff and Class Members without notice, a

24  defective product that included IQ Agent, specially customized by Pantech or authorized for

25  customization by Pantech for use on its mobile device. Pantech acted individually, and in

26  concert, with Carrier IQ to gain unauthorized access to, log, collect, and transmit Plaintiff's

27  and Class Members' confidential, unencrypted data and to provide third-party access to this

28  data. IQ Agent is a native Pantech application that was installed on Pantech mobile devices

1    with the knowledge of Pantech.

2        5.    Carrier IQ acted independently, and in concert with Pantech, knowingly

3    authorizing, directing, ratifying, acquiescing in, or participating in the conduct alleged herein.

4        6.    Carrier IQ individually, and in concert with Pantech has been systematically

5    engaged in and facilitated a covert operation of logging and tracking Plaintiff's and Class

6    Members' confidential, unencrypted user data and utilizing Plaintiff's and Class Members'

7    mobile device resources, violating one or more of the following:

8          (a)    ELECTRONIC COMMUNICATIONS PRIVACY ACT, 18 U.S.C.

9    §2510;

10         (b)    STORED COMMUNICATIONS ACT, 18 U.S.C. §2701;

11         (c)    CONSUMER LEGAL REMEDIES ACT, ("CLRA") CALIFORNIA

12   CIVIL CODE § 1750;

13         (d)    UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS AND

14   PROFESSIONS CODE §17200;

15         (e)    CALIFORNIA'S COMPUTER CRIME LAW, PENAL CODE §502;

16         (f)    CALIFORNIA INVASION OF PRIVACY ACT, PENAL CODE

17   §630;

18         (g)    SONG-BEVERLY WARRANTY ACT, CALIFORNIA CIVIL CODE

19   § 1792

20         (h)    TEXAS DECEPTIVE TRADE PRACTICES ACT, TEXAS

21   BUSINESS AND COMMERCE CODE § 17.41

22         (i)    BREACH OF EXPRESS WARRANTY

23         (j)    BREACH OF IMPLIED WARRANTY

24         (k)    NEGLIGENCE

25         (l)    TRESPASS TO PERSONAL PROPERTY/ CHATTELS

26         (m)    CONVERSION

27         (n)    UNJUST ENRICHMENT

28

## II.  JURISDICTION AND VENUE

7.   This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from Defendants; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists.

8.   Venue is proper in this District under 28 U.S.C. §1391(b) and (c) against Defendants. A substantial portion of the events, conduct and omissions giving rise to the violations of law complained of herein occurred in this District. Carrier IQ's principal executive offices and headquarters are located in this District at 1200 Villa Street, Suite 200, Mountain View, CA 94041.

9.   This Court has personal jurisdiction over the Defendants because Carrier IQ maintains its corporate headquarters in, and the events, conduct and omissions giving rise to the violations of law complained herein occurred in California. Pantech conducts business in California and is engaged in the acts alleged herein in California.

10.   This Court also has subject matter jurisdiction over all causes of action and the Defendants implicated therein pursuant to 28 U.S.C. §1332(d), and because this action arises in part under a federal statute and this Court has jurisdiction pursuant to 18 U.S.C. §2710(c) which confers jurisdiction in the United States District Court for actions related to the Electronic Communications Privacy Act 18 U.S.C. §2510 and the Stored Communications Act, 18 U.S.C. §2701.

11.   **INTRADISTRICT ASSIGNMENT**: Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Jose Division as it arises from Santa Clara County where Carrier IQ is headquartered and where the actions alleged as the basis of this claim took place.

## III.  PARTIES

12.   Plaintiff Mark Laning ("Laning") is a citizen and resident of Carrollton, Texas (Denton County). On information and belief, Laning incorporates all allegations within this complaint. Laning is a representative of the class ("Class"), as defined within the Class Allegations. In or around November 2011, Laning purchased a Pantech P5000 mobile device

1  that was preinstalled or automatically updated with IQ Agent, and used such mobile device on
2  one or more occasions during the class period in Texas.

3      13.    Laning was not aware that IQ Agent was installed on his Pantech device, and
4  was not aware that every time he used his Pantech device, IQ Agent was logging and collecting
5  his confidential incoming text messages; the URLs of websites he visited; and his actual GPS
6  coordinates; among other private and personally-identifying data. He also was not aware that
7  IQ Agent made this confidential, unencrypted data available on Laning's mobile device log so
8  that *any* device software or applications with log file permission could access it. Finally,
9  Laning was not aware that IQ Agent depleted his mobile device battery power, device memory,
10 CPU, bandwidth and text messages, even while he was not using his device. The IQ Agent
11 software does not show up under the application launch list on Laning's device.

12     14.    Carrier IQ is a Delaware corporation that maintains and has maintained at all
13 relevant times its headquarters at 1200 Villa Street, Suite 200, Mountain View, CA, 94041
14 (Santa Clara County, California). Carrier IQ does business throughout the United States, and in
15 particular, does business in the State of California and in this County.

16     15.    Pantech Wireless, Inc. is a Georgia corporation with its principal place of
17 business located at 5607 Glenridge Dr Ne Ste 500, Atlanta, Georgia, 30342-7200. Pantech
18 does business throughout the United States, and in particular, does business in the State of
19 California and in this County.

20 **IV.    PLAINTIFF'S EXPERIENCE**

21     16.    At all relevant times herein, Plaintiff was and is a resident of Texas. During the
22 class period, Plaintiff owned and operated one or more Pantech mobile devices installed with
23 IQ Agent without Plaintiff's knowledge.

24     17.    On one or more occasions during the class period, Plaintiff accessed and used
25 his Pantech mobile device to receive text messages and visit websites in his city of residence
26 and elsewhere.

27     18.    During the relevant class period, the IQ Agent software was "hidden" and did
28 not appear on the application launch menu on Plaintiff's Pantech mobile device. During the

1  relevant class period, Plaintiff was unaware that IQ Agent populated and logged incoming text

2  messages, visited URLs and GPS location data on his device log files. Plaintiff was also

3  unaware that this confidential data was available, unencrypted, to all software and programs

4  with log file permission running on his device. Additionally, he was unaware that IQ Agent

5  had the mechanisms to, and did, transmit user data from Plaintiff's devices to remote servers

6  via periodic scheduling, WAP push requests, and text requests.

7       19.    During the relevant class period, IQ Agent, customized in part by Pantech, was

8  "hidden" and did not appear on the launch list of applications and software installed on

9  Plaintiff's Pantech mobile device.

10      20.    In or around December 2011, Plaintiff became aware of information related to

11 the tracking activities of Carrier IQ and Pantech.

12      21.    Plaintiff's mobile devices revealed that the IQ Agent software resided on his

13 device without notice to Plaintiff or authorization from Plaintiff.

14      22.    Plaintiff considers information about his received text messages, visited

15 websites and GPS location to be in the nature of confidential and personal information that he

16 protects from disclosure, including by controlling his mobile device's privacy settings for

17 acceptance or rejection. Plaintiff was not made aware by Defendants of the existence of IQ

18 Agent on his mobile device or the logging, collection and transmission of his mobile device

19 data.

20      23.    Plaintiff also considers his device battery power, device memory, CPU,

21 bandwidth and text messages to be valuable personal property that he protects from

22 unauthorized use by third parties, including by controlling what software and applications have

23 access to those resources. Plaintiff was not made aware by Defendants of the existence of IQ

24 Agent on his mobile device or the depletion of his device battery power, device memory, CPU,

25 bandwidth and text messages by that software.

26      24.    It is Plaintiff's belief that the Carrier IQ software, customized or authorized for

27 customization in part by Pantech, was logging, collecting and transmitting confidential user

28 data on his mobile devices, thus permitting one or more objects within his mobile device to be

1  used for tracking and analysis by Defendants and/or third parties for the purposes of
2  monitoring and profiling his mobile device activities. Plaintiff did not receive notice of the
3  installation of a tracking identifier, did not consent to its installation, and did not want a
4  tracking identifier to be installed on his mobile device. Moreover, Plaintiff did not authorize
5  Defendants to log, collect, transmit, or store his confidential mobile device data without notice
6  or express consent. Such software was running on Plaintiff's mobile device and collecting and
7  transmitting Plaintiff's data without notice or authorization, utilizing Plaintiff's battery power,
8  device memory, CPU, bandwidth and limited text messages without notice or authorization,
9  even when Plaintiff stopped actively using the device.

10      25.     In selecting the Pantech mobile device over the service and goods of other
11  competing mobile device manufacturers, Plaintiff reasonably expected that his confidential
12  user data would not be accessed, logged and transmitted to third parties without his knowledge
13  and consent. He also reasonably expected that his mobile device resources would not be
14  depleted without his knowledge or control.

15      26.     Had Plaintiff known that the Pantech device he purchased would include
16  software that provided third party access to his confidential user data and his mobile device
17  resources without notice to or authorization by Plaintiff, Plaintiff would have not purchased
18  that device.

19      27.     Plaintiff was harmed by Defendants' practices, including but not limited to the
20  following:

21              (a)     Costs to purchase the defective Pantech mobile device;

22              (b)     Violations of Plaintiff's legally protected federal, state and common
23  law rights of privacy, especially related to unencrypted logging, storage and transmission of
24  Plaintiff's confidential user data;

25              (c)     Time and expense to remedy the effects of Defendants' actions;

26              (d)     Time and expense to repair Plaintiff's mobile devices and remedy the
27  impaired operability caused by the Defendants;

28              (e)     Loss of property due to the inability to re-sell Plaintiff's and Class

1  Members' mobile devices due to the Carrier IQ application; and

2          (f)      Financial harm by the Defendants' unauthorized use of Plaintiff's

3  mobile device resources during the unauthorized process of logging and transmitting user

4  data.

5          28.      It is Plaintiff's belief that IQ Agent's logging, collection and transmission of

6  confidential user data on his mobile device permitted one or more objects within his mobile

7  devices to be used for tracking and analysis by Defendants and/or third parties, thus his mobile

8  device data was obtained in an effort to monitor and profile his mobile device activities.

9  Plaintiff did not receive notice of the installation of a tracking identifier, did not consent to its

10  installation, and did not want a tracking identifier to be installed on his mobile device.

11  Moreover, Plaintiff did not authorize Defendants to log, collect, transmit, or store his

12  confidential mobile device data without notice or express consent.

13         29.      Defendants' business practices unfairly wrested from Plaintiff control over his

14  user data privacy and control over his device resources. Defendants' logging, collection and

15  unencrypted disclosure of Plaintiff's confidential user data violates user expectations,

16  diminishes user privacy, and contradicts the Manufacturer's Warranty. Defendants caused

17  harm and damages to Plaintiff's finite device resources, thus preventing Plaintiff from using

18  the device for his intended purposes and resulting in instability issues.

19  **V.    COMMON EXPERIENCES BETWEEN PLAINTIFF AND CLASS MEMBERS**

20         30.      At all relevant times herein, the sequence of events, and consequences common

21  to Plaintiff and Class Members, made the basis of this action, include, but are not limited to the

22  following:

23         (a)      Plaintiff and Class Members are individuals in the United States who

24  purchased and used a Pantech mobile device that had IQ Agent software installed and/or

25  authorized for installation by Pantech, without notice or consent;

26         (b)      Pantech, a mobile device manufacturer, had entered into a legally

27  binding contract with Carrier IQ to host the IQ Agent software on its mobile device;

28         (c)      Carrier IQ was aware that Pantech had preinstalled IQ Agent on

1    Plaintiff's and Class Members' mobile devices. It was also aware that Pantech had

2    customized IQ Agent, and that IQ Agent was "hidden" and did not appear in the launch list

3    of applications installed on Plaintiff's and Class Members' mobile devices;

4             (d)     Plaintiff and Class Members accessed and used their Pantech mobile

5    devices that had the preinstalled or uploaded IQ Agent software application;

6             (e)     Carrier IQ collected confidential user data from Plaintiff's and Class

7    Members' mobile devices without consent of, or notice to, Plaintiff and Class Members;

8             (f)     Carrier IQ sent Plaintiff's and Class Members' unencrypted

9    confidential mobile device data to its servers located in California without notice to or

10   authorization from Plaintiff and Class Members;

11            (g)     Pantech transmitted, and/or allowed access to Plaintiff's and Class

12   Members' confidential mobile device data, without notice or authorization, to Pantech and

13   *any* software with log file access on Plaintiff's and Class Members' devices. Upon

14   information and belief, this confidential data was unencrypted when stored in the log file and

15   during at least some part of its transmission;

16            (h)     Carrier IQ created a database related to Plaintiff's and Class Members'

17   mobile device data and activities, to assist the Defendant's tracking scheme. Such tracking

18   could not be detected, managed or deleted, and provided, in whole or part, the collective

19   mechanism to track Plaintiff and Class Members, without notice or consent;

20            (i)     Carrier IQ conducted systematic and continuous surveillance of the

21   Plaintiff's and Class Members' mobile device activity from its headquarters in California

22   which continues to date;

23            (j)     Carrier IQ copied, used, and stored Plaintiff's and Class Members'

24   mobile device data in California after it knowingly accessed, without authorization,

25   Plaintiff's and Class Members' mobile devices;

26            (k)     Carrier IQ obtained and retained the data in California for a period that

27   far exceeded the purpose claimed by Carrier IQ for obtaining the data;

28            (l)     Carrier IQ obtained individually, and in concert with Pantech,

1  Plaintiff's and Class Members' confidential user data, derived, in whole or part, from its

2  monitoring the mobile device activities of Plaintiff and Class Members. This sensitive

3  information includes, but is not limited to, incoming text messages, visited URLs and GPS

4  coordinates;

5        (m)   Pantech and Carrier IQ failed to notify and warn Plaintiff and Class

6  Members of Carrier IQ's logging and tracking activities involving their mobile devices

7  before, during, or after the unauthorized practices so that Plaintiff and Class Members were

8  unable to take appropriate actions to opt-out of the unauthorized surveillance by Defendants

9  and other third parties;

10        (n)   Pantech failed to block access to, and void the licensing agreements of

11  Carrier IQ after it received notice of Carrier IQ's tracking actions made the basis of this

12  action;

13        (o)   Carrier IQ and Pantech failed to provide any terms of service or

14  privacy policy related to the use of IQ Agent for tracking Plaintiff's and Class Members'

15  mobile activities, or provide an updated privacy policy or any notice alerting users of its

16  activity, made the basis of this action so that Plaintiff and Class Members had no notice of

17  such activities, nor the ability to mitigate their harm and damage after the fact;

18        (p)   Defendants converted Plaintiff's and Class Members' mobile device

19  data, including but not limited to their incoming text messages, visited URLs and GPS

20  coordinates; and

21        (q)   Defendants depleted Plaintiff's and Class Members' mobile device

22  resources while running the IQ Agent software, including the device battery power, device

23  memory, CPU, bandwidth and text messages.

24        31.   Plaintiff and Class Members involved with the Defendants were harmed by

25  Defendants' practices, including but not limited to the following:

26        (a)   Violations of Plaintiff's and Class Members' legally protected federal,

27  state and common law rights of commerce and privacy, especially related to unencrypted

28  transmission of Plaintiff and Class Members' confidential and sensitive user data;

1        (b)     Financial harm due to the costs to purchase the defective Pantech

2    mobile device;

3              (c)     Financial harm due to the time and expense to remedy the effects of

4    Defendants' actions;

5              (d)     Financial harm due to the time and expense to repair Plaintiff's and

6    Class Members' mobile devices and remedy the impaired operability caused by the

7    Defendants;

8              (e)     Financial harm due to the loss of property due to the inability to re-sell

9    Plaintiff's and Class Members' mobile devices due to the Carrier IQ application;

10             (f)     Financial harm due to the loss of property due to the unauthorized

11   access and use of Plaintiff's and Class Members' confidential user data, depriving Plaintiff

12   and Class Members of such possession and use;

13             (g)     Financial harm due to the Defendants' unauthorized use of Plaintiff's

14   and Class Member's mobile device's battery power, device memory, CPU, bandwidth and

15   text messages during the unauthorized process of obtaining user data;

16   **VI.    FACTUAL ALLEGATIONS**

17   **A. <u>Background</u>**

18        32.    On October 26, 1999 the Wireless Communication and Public Act of 1999 was

19   enacted and became known as the "e911 Act." It was an amendment to the Telecommunication

20   Act of 1996. The purpose of the bill was to promote and enhance public safety through the use

21   of 911 as universal assistance number. The Federal Law mandated that mobile phones be

22   embedded with a Global Positioning System ("GPS") chip, which could calculate a user's

23   coordinates to within a few yards by receiving signals from satellites. This law enacted to aid

24   those in harm's way, resulted in the  computing industry developing hardware and software to

25   assist in the development of this technology or mobile devices provided Carrier IQ the impetus

26   to originate a business plan to take advantage of the benefit of embedded GPS chips in all

27   mobile phones for its own commercial benefit:

28             This confluence of circumstances and events— rapid adoption of

> new wireless technologies, improved resiliency of service,
> increased data transmission rates, the e911 law requiring homing
> chips, and market precedents which show that mobile device
> users are willing to pay for wireless services or applications—
> establish the feature-rich wireless station as an increasingly
> logical and compelling channel for the free flow of
> communications, information, entertainment and commerce.

United States Patent No.: US 7,609,650 B2, COLLECTION OF DATA AT TARGET

WIRELESS DEVICES USING DATA COLLECTION PROFILES, Assignee: Carrier IQ, Inc.,

Mountain View, CA (US), Filed: July 5, 2005.

33.     Carrier IQ's software is reportedly installed in excess of one hundred and fifty

million (150,000,000) mobile devices, including mobile devices manufactured by Pantech.

These devices installed with IQ Agent are inherently defective, and Defendants falsely

advertised, marketed and distributing these mobile devices, without disclosure of the material

facts about the defect, misrepresenting the performance of the devices, violating express and

implied warranties, thus rendering the mobile devices unable to be used for their intended

purposes. Such activities resulted in a pattern of covert mobile device surveillance, wherein

Defendants installed IQ Agent on Plaintiff's and Class Members' mobile device without

authorization and consent, thereby committing unauthorized access, collection, storage, and

use of, the mobile device and data derived from the Plaintiff's and Class Members' use of the

mobile devices and transmitting information, code, and commands to collect, monitor, and

remotely store non-anonymized Plaintiff's and Class Members' confidential mobile device

data. Defendants' unauthorized access of this confidential, unencrypted data also allowed

access to *all* software and applications with log file access so that Plaintiff's and Class

Members' data could be transmitted by multiple unknown parties at any time, *like a pac-man*

*creeping 150 million mobile phones and "calling home."*

34.     The Pantech-version of the software IQ Agent, is currently preinstalled or

authorized for remote update installation by Pantech on its Carrier IQ-enabled mobile devices

and was also installed via software updates on older Pantech devices.

**B.  Carrier IQ: " See What Content They Consume Even Offline"**

35.   According to Carrier IQ, the software is designed to monitor, manage and support mobile devices deployed across mobile operators, service providers and enterprises. Carrier IQ's website explains:

> [IQ Agent] provides a level of visibility into true customer experience that was, previously unavailable in the mobile industry. [IQ Agent] uses data directly from the mobile phone itself to give a precise view of how users interact with both their phones and the services delivered through them, even if the phone is not communicating with the network.

http://www.carrieriq.com/overview/IQInsightExperienceManager/index.htm     (last     visited December 5, 2011).

36.   IQ Agent is a monitoring software that runs continuously in the background reportedly to monitor device and application performance. When a particular event or error associated with the device occurs, the software collects data associated with the event or error and may upload it either in real time or at a later time to its data repository for analysis.

37.   During the use of a mobile device in a mobile communication network, parameter data defining conductors associated with the mobile device and operation is generated. The mobile device also generates event data defining events of the mobile device for the associated mobile user. Such events are referred to as "Trigger points."

38.   IQ Agent is programmed to obtain qualifying characteristics which may include device type, such as manufacturer and model, available memory and battery life, the type of applications resident on the device, the geographical location of the device, usage statistics, including a "profile" that characterizes a user's interaction with a device, and the profile. Such mobile device characteristics are referred to as "metrics."

39.   Carrier IQ's patent for "data collection associated with components and services of a wireless communication network" explains the breadth of this data collection,

> Carrier IQ is able to query any metric from a device. A metric can be a dropped call because of lack of service. The scope of the word metric is very broad though, including device type, such as manufacturer and model, available memory and battery life, the type of applications resident on the device, the geographical location of the device, the end user's pressing of keys on the device, usage history of the device, including those that

1    characterize a user's interaction with a device.

2    http://www.faqs.org/patents/app/20110106942 (last accessed December 2, 2011).

3         40.    Carrier IQ provides a platform for data collection and management system to

4    dynamically generate and download to a population of wireless devices rule-based data

5    collection by coding its software to function when interfaced with "trigger points" and to

6    obtain "metrics." Data collection profiles may be generated manually by a network

7    administrator, a software developer or other personnel involved in the operation of the network

8    or "network administrators," created offline as a portion of a data analysis solution, or

9    automatically generated based on network .

10        41.    This parameter data and event data may be used to monitor a network or used

11   by an advertising system of the mobile communications network to select an advertisement and

12   the timing of the display of the advertisement, and is necessary due to the problems associated

13   with mobile advertising.

14        42.    Mobile Internet advertising currently consists of streaming graphic files, in real

15   time, into content rendered by a user's mobile device browser. Mobile advertising systems

16   though lack reliable browser tracking while traditional online advertising relies on the use of

17   browser cookies. Implementations inherent in conventional mobile ad serving have effectively

18   prevented mobile advertising from being effective because of its inability to obtain mobile

19   device "uniqueness." In order to obtain such uniqueness, the mobile advertising industry

20   sought a means to obtain unique device identifiers which provide a unique reference to

21   individual mobile devices. Unlike traditional cookies, such identifiers are hard coded into a

22   user's phones software, and thus a user has no ability to disable mobile device identifiers. .

23        43.    Mobile Device "tracking" by use of mobile device identifiers is not exactly

24   comparable to any other type of tracking by advertising networks. This is not anonymous data

25   – but an exact ID that's unique to each physical device, and if merged, with mobile device

26   activities, including but not limited to, identifying phone accessed user's physical locations,

27   time of transmission, applications downloaded, social network IDs,  providing unlimited

28   advertising opportunities (i.e., commercial value). Recording of a user's GPS, without their

1   knowledge or consent also provides a security harm to the mobile device user. When tracking a

2   user's location data on the mobile device, it is calculated to eight decimal points that can be far

3   more exact and accurate than any sort of geographically-based IP address look-up on the web.

4   Instead of getting a general location, location data on a GPS-enabled mobile can identify user's

5   precise latitude and longitude.

6       44.    The mobile device industry thus sought the technical means of synchronizing

7   tracking code so that information about individual consumer behavior on mobile devices could

8   be shared between companies and the unique device identifiers used in the majority of mobile

9   devices would be put to this purpose. Carrier IQ initial patent was able to extract unique

10  Identifiers from mobile devices:

11  Patent Title: COLLECTION OF DATA AT TARGET WIRELESS DEVICES USING DATA

12  COLLECTION PROFILES SYSTEMS AND METHODS FOR USING DISTRIBUTED

13  NETWORK ELEMENTS TO IMPLEMENT MONITORING AND DATA COLLECTION

14  CONCERNING SELECTED NETWORK PARAMETERS.

15  Patent No.: US 7,609,650 B2

16  Assignee: Carrier IQ, Inc., Mountain View, CA (US)

17  Filed: July 5, 2005

18  Inventor: Konstantin Othmer

19      45.    The dilemma facing the mobile advertising industry is that once the mobile

20  device data was extracted, a system and method was needed for wireless devices to use data for

21  mobile advertising. While Carrier IQ may have concentrated on extraction of mobile device

22  metrics, other companies were interested in assisting the mobile advertising networks to use

23  mobile device data.

24  **C. IQ Agent Technology**

25       i.    *IQ Agent Collection of Unencrypted User Data Via Device "Log File"*

26      46.    To monitor use of a mobile device, IQ Agent collects user data by utilizing the

27  mobile device's "log file"—a storage file that records certain actions or events that occur on

28  the device in real time, such as when the device is turned on or disconnected from a power

1    source. The log file can be examined by any software or application with Android operating

2    system permission to view it. Data is populated on the log file when software such as Pantech

3    IQ Agent prompts the operating system to append an entry into the log file.

4        47.    IQ Agent specifically prompts mobile operating systems to populate log file

5    data for a number of confidential events, including the following:

6           (a)     the contents of all incoming text messages;

7           (b)     the URLs of all websites visited; and

8           (c)     a user's GPS coordinates.

9    IQ Agent records this data on the log file in an unencrypted format, so the data is available to

10    *any* device software or applications with log file permission. In other words, *any* software or

11    application with Android operating system access can transmit and collect the user's

12    incoming text messages, visited URLs and/or GPS coordinates because of the log file entries

13    populated by IQ Agent. This log file access is typically granted to software and applications

14    that a user installs from the market and a user would have no reason to believe that in

15    granting "log file" access, he or she is also granting access to this unencrypted, confidential

16    data.

17        48.    This puts users' confidential data at great risk. Even if the authors of the

18    software and applications running on the mobile device have the best intentions, if these

19    authors incorporate any third party code into their own software or applications (which is quite

20    common), the users' data is exposed to these other third parties and is jeopardized.

21        ii.    *IQ Agent Transmission of User Data Via Periodic Scheduling and Remote*

22              *Triggering*

23        49.    IQ Agent provides two mechanisms to transmit confidential data off the device:

24    periodic scheduling and remote triggering. The IQ Agent software provides specific "collection

25    points" where the confidential data will be sent. One of these "collection points" encoded in

26    the software is http://collector.sky.carrieriq.com:7001/collector/c?cm_sl=5. Data transmitted to

27    this Carrier IQ server will remain unencrypted and unprotected during data transmission and

28    receipt.

50.     IQ Agent can prompt a user's mobile device to send confidential data to Carrier IQ's server on a periodic schedule, e.g., once a week or once a month.  It can also prompt a user's device to send confidential data at any time via a "WAP push request" or a "text request." A WAP push request is a specially-formatted message delivered to the device over a mobile data or internet connection requesting transmission of data from the device. A user would be unaware that a WAP push request had been made to their device. A text request is a standard text message sent to the device with contents beginning with "//CM" or "//IQ." The contents of that message direct the device to transmit data from the device. This text message is "suppressed" or hidden to the operator, meaning that the user does not see the text message and is unaware that Carrier IQ or some other party has requested transmission of confidential data from the device.

iii.     *IQ Agent Continuous Unauthorized Data Logging and Transmission*

51.     IQ Agent begins logging confidential user data the moment the user first purchases the mobile device and turns it on, without notice to or consent from the user. IQ Agent logs this data silently so that users have no knowledge the data is being logged or is available to any device software or applications with log file permission. The data is also transmitted silently so users are unaware that confidential data is being broadcast from their devices. Data is logged and transmitted even when the device is not in use.

52.     An average user will have no knowledge that the IQ Agent software is even running on his or her device, and the IQ Agent software does not appear on the device's application launch menu.

53.     A user is unable to stop the Carrier IQ software from running. When a user manually turns off the IQ Agent software, it automatically restarts itself seconds later. A user is unable to delete or remove the IQ Agent software from the device without voiding Pantech's manufacturer's warranty.

54.     Because the software is preinstalled or authorized for automatic remote installation by Pantech and runs as part of the device operating system, data is continuously collected and can be transmitted via wireless internet or other means, even if the device user

1   has no carrier contract and the mobile device is not connected to a mobile network.

2           iv.   *IQ Agent Depletion of Resources*

3       55.   Because IQ Agent runs continuously and silently, it depletes device resources

4   without notice to or authorization from the user. These depleted resources include:

5           (a)   battery power (required to run the device while activity such as data

6   logging and transmission occurs);

7           (b)   device memory (used to log confidential user data and receive and

8   respond to WAP push requests and/or text requests);

9           (c)   CPU (also known as "central processing unit" used to process the

10   instructions and perform the functions required by the IQ Agent software);

11           (d)   bandwidth (used to transmit and receive data according to IQ Agent

12   instructions); and

13           (e)   text messages (IQ Agent's hidden text request function indicates a text

14   has been received by the user even when the user cannot see it, and may result in a charges to

15   users who pay for a finite number of texts per month).

16   **D. Pantech's Warranty**

17       56.   There is no choice to "opt in" to Carrier IQ's data collection and transmission

18   by downloading IQ Agent since in many cases it is preinstalled or installed via remote

19   automatic update on Plaintiff's and Class Members' mobile devices. Users cannot uninstall it,

20   block it, or cease its actions. Pantech and Carrier IQ provide Plaintiff and Class Members no

21   notice of this software or the functions it performs.

22       57.   Pantech's Manufacturer's Warranty for the Pantech mobile devices does not

23   mention or disclose the existence of the IQ Agent software on the device or the functions that

24   software performs.

25       58.   Pantech's Manufacturer's Warranty states that the Warranty will be void if a

26   user alters or impairs the operating system, which would include deleting or attempting to

27   delete the IQ Agent software from the device.

28   **E. Defendants' Harmful Business Practices**

59.     Defendants' business practice unfairly wrests the user's control and consumes the resources of the Plaintiff's and Class Members' mobile devices by gathering information, populating such information in an unencrypted format in their mobile log file, and transferring such information to storage for subsequent use. Defendants caused harm and damages to Plaintiff's and Class Members' mobile devices' finite resources, depleted and exhausted its battery power, memory, CPU bandwidth and text, thus causing an actual inability to use it for its intended purposes and resulting in instability issues.

60.     Defendants' collection and disclosure of this personal information violates user expectations, diminishes user's privacy, and contradicts Pantech's own representations. These business practices are unfair and deceptive trade practices as set forth further below.

61.     Defendants' activities, made the basis of this action include, but are not limited to, economic harm due to the unauthorized use of Plaintiff's and Class Members' bandwidth, the amount of data that can be transmitted across a channel in a set amount of time. Any transmission of information on the internet includes bandwidth. Similar to utility companies, such as power or water, the "pipeline" is a substantial capital expenditure, and bandwidth usage controls the pricing model. Hosting providers charge user's for bandwidth because their upstream provider charges them and so forth until it reaches the "back bone providers". Retail providers purchase it from wholesalers to sell its consumers.

62.     Defendants' activities made the basis of this action consume vast amounts of bandwidth, slowing a user's internet connection by using their bandwidth, in addition to diminishing the mobile devices "battery life," CPU and device memory in order to send, store and retrieve metric data.

63.     Plaintiff and Class Members were afforded only a millisecond of time after activating their Pantech mobile device before IQ Agent intentionally, and without users' authorization and consent, accessed Plaintiff's and Class Members' mobile device. While only the most tech savvy mobile device users are familiar with IQ Agent's activity, even a more finite amount of individuals know how to actually remove IQ Agent, let alone recognize the risk of that software to their confidential user data.

## VII.   CLASS ACTION ALLEGATIONS

64.   Plaintiff brings this action pursuant to Rule 23(a) and 23(b)(1)-(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated, as members of the proposed nationwide Class ("Nationwide Class"), defined as follows:

> All consumers in the United States who purchased and used a Pantech mobile device on which the IQ Agent software resides from January 10, 2007 to January 10, 2012.

65.   Plaintiff also bring certain of the claims on behalf of itself and a portion of the class described as the Texas subclass ("Texas Subclass"), defined as follows:

> All consumers residing within the State of Texas who purchased and used a Pantech mobile device on which the IQ Agent software resides from January 10, 2007 to January 10, 2012.

66.   Excluded from the Nationwide Class and Texas Subclass are the officers, directors, and employees of Carrier IQ and Pantech, and their respective legal representatives, heirs, successors and assigns.

67.   This action is brought as a class action and may properly be so maintained pursuant to the provisions of Federal Rule of Civil Procedure 23. Plaintiff reserves the right to modify the Nationwide Class and the Texas Subclass definitions and the class period pursuant to discovery that is conducted hereafter.

68.   The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff estimates that there are hundreds of thousands of consumers who purchased Pantech mobile devices installed with the IQ Agent software.

69.   There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

(a)   whether Defendants omitted, misrepresented or otherwise failed to notify Class Members of the fact that IQ Agent was installed on Plaintiff's and Class Members' mobile devices;

(b)   whether Defendants omitted, misrepresented or otherwise failed to notify Class Members of the fact that IQ Agent logs unencrypted data in the device log file that includes incoming text messages, visited URLs and GPS location coordinates;

1             (c)    whether Defendants omitted, misrepresented or otherwise failed to

2  notify Class Members of the fact that IQ Agent utilizes finite device resources such as battery

3  power, device memory, CPU, bandwidth and text messages;

4             (d)    whether  Defendants'  conduct  violates  the  federal  Electronic

5  Communications Privacy Act

6             (e)    whether  Defendants'  conduct  violates  the  federal  Stored

7  Communications Act;

8             (f)    whether Defendants' conduct violates California's Consumers Legal

9  Remedies Act;

10            (g)    whether  Defendants'  conduct  violates  Texas's  Deceptive  Trade

11  Practices Act;

12            (h)    whether Defendants were negligent in their failure to disclose the

13  presence of IQ Agent on Plaintiff's and Class Members' mobile devices and/or their failure

14  to seek Plaintiff's and Class Members' consent prior to logging, collecting and transmitting

15  confidential user data;

16            (i)    whether Defendants' conduct constitutes trespass; and

17            (j)    whether Defendants were unjustly enriched from their conduct, and

18  whether they must disgorge profits to Plaintiff and Class Members.

19      70.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff

20  has no interests antagonistic to those of the Class and are subject to no unique defenses.

21      71.    Plaintiff will fairly and adequately protect the interests of the Class and has

22  retained attorneys experienced in class and complex litigation.

23      72.    A class action is superior to other available methods for the fair and efficient

24  adjudication of this controversy for the following reasons:

25            (a)    It is economically impractical for each member of the Class to

26  prosecute individual actions;

27            (b)    The Class is readily definable;

28            (c)    Prosecution  as  a  class  action  will  eliminate  the  possibility  of

1    repetitious litigation;

2           (d)     A class action will enable claims to be handled in an orderly and

3    expeditious manner;

4           (e)     A class action will save time and expense and will ensure uniformity

5    of decisions; and

6           (f)     Plaintiff does not anticipate any difficulty in the management of this

7    litigation as a class action.

8       73.    Defendants have acted and refused to act on grounds that apply generally to the

9    Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

10    the Class as a whole.

11       74.    Plaintiff believes that notice to the Class is necessary and proposes that notice of

12    this class action be provided by individual mailings to Class members and/or by publication in

13    national publications.

14    **VIII.    CAUSES OF ACTION**

15                         **FIRST CAUSE OF ACTION**

16      **Violation of the Electronic Communications Privacy Act 18 U.S.C. § 2510**

17                           **Against All Defendants**

18       75.    Plaintiff incorporates by reference all paragraphs previously alleged herein.

19       76.    Plaintiff asserts this claim against each and every Defendant named herein in

20    this complaint on behalf of themselves and the Class.

21       77.    The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510,

22    referred to as "ECPA," regulates wire and electronic communications interception and

23    interception of oral communications, and makes it unlawful for a person to "willfully intercept,

24    endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any

25    wire, oral, or electronic communication," within the meaning of 18 U.S.C. § 2511(1).

26       78.    Defendants violated 18 U.S.C. § 2511 by intentionally acquiring and/or

27    intercepting, by device or otherwise, Plaintiff's and Class Members' electronic

28    communications, without knowledge, consent, or authorization.

1       79.    At all relevant times, Defendants engaged in business practices of intercepting

2   and collecting the Plaintiff's and Class Members' confidential electronic communications

3   which included incoming text messages, URLs of websites viewed and GPS coordinates from

4   within their mobile devices. Once Defendants obtained this confidential personal information,

5   Defendants used it to aggregate mobile device data regarding Plaintiff's and Class Members'

6   uses of their mobile devices. Defendants also made this confidential and unencrypted data

7   available to any device software or application with log file access, further violating Plaintiff's

8   and Class Members' privacy.

9       80.    The contents of data transmissions from and to Plaintiff's and Class Members'

10   personal computers constitute "electronic communications" within the meaning of 18 U.S.C.

11   §2510.

12       81.    Plaintiff and Class Members are "person[s] whose ... electronic communication

13   is intercepted ... or intentionally used in violation of this chapter" within the meaning of 18

14   U.S.C. § 2520.

15       82.    Defendants violated 18 U.S.C. § 2511(1)(a) by intentionally intercepting,

16   endeavoring to intercept, or procuring any other person to intercept or endeavor to intercept

17   Plaintiff's and Class Members' electronic communications.

18       83.    Defendants violated 18 U.S.C. § 2511(1)(c) by intentionally disclosing, or

19   endeavoring to disclose, to any other person the contents of Plaintiff's and Class Members'

20   electronic communications, knowing or having reason to know that the information was

21   obtained through the interception of Plaintiff's and Class Member's electronic

22   communications.

23       84.    Defendants violated 18 U.S.C. § 2511(1)(d) by intentionally using, or

24   endeavoring to use, the contents of Plaintiff's and Class Members' electronic communications,

25   knowing or having reason to know that the information was obtained through the interception

26   of Plaintiff's and Class Members' electronic communications.

27       85.    Defendants' intentional interception of these electronic communications without

28   Plaintiff's or Class Members' knowledge, consent, or authorization was undertaken without a

1   facially valid court order or certification.

2       86.   Defendants intentionally used such electronic communications, with knowledge,

3   or having reason to know, that the electronic communications were obtained through

4   interception, for an unlawful purpose.

5       87.   Defendants unlawfully accessed and used, and voluntarily disclosed, the

6   contents of the intercepted communications to enhance their profitability and revenue through

7   manufacturer contracts and advertising. This access and disclosure was not necessary for the

8   operation of Defendants' system or to protect Defendants' rights or property.

9       88.   The Electronic Communications Privacy Act of 1986, 18 USC §2520(a)

10  provides a civil cause of action to "any person whose wire, oral, or electronic communication

11  is intercepted, disclosed, or intentionally used" in violation of the ECPA.

12      89.   Defendants are liable directly and/or vicariously for this cause of action.

13  Plaintiff therefore seeks remedy as provided for by 18 U.S.C. §2520, including such

14  preliminary and other equitable or declaratory relief as may be appropriate, damages consistent

15  with subsection (c) of that section to be proven at trial, punitive damages to be proven at trial,

16  and a reasonable attorney's fee and other litigation costs reasonably incurred.

17      90.   Plaintiff and Class Members have additionally suffered loss by reason of these

18  violations, including, without limitation, violation of the right of privacy.  Defendants exposed

19  Plaintiff's and Class Members' personal information to any third party software or application

20  with log file access residing on their mobile devices without Plaintiff's or Class Members'

21  permission or knowledge, and in an unencrypted format. Plaintiff and Class Members were

22  damaged by Defendants' unauthorized use of the resources of Plaintiff's and Class Members'

23  mobile devices including battery power, device memory, CPUs, and bandwidth.  Plaintiff and

24  Class Members had unauthorized charges to their mobile devices for every hidden text

25  message that was sent by Defendants.

26      91.   Plaintiff and the Class, pursuant to 18 U.S.C. §2520, are entitled to preliminary,

27  equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or

28  $100 a day for each day of violation, actual and punitive damages, reasonable attorneys' fees,

1    and Defendants' profits obtained from the above-described violations. Unless restrained and

2    enjoined, Defendants will continue to commit such acts. Plaintiff's and Class Members'

3    remedy at law is not adequate to compensate them for these inflicted and threatened injuries,

4    entitling Plaintiff and Class Members to remedies including injunctive relief as provided by 18

5    U.S.C. § 2510.

<div align="center">

**SECOND CAUSE OF ACTION**

**Violation of the Stored Communications Act, 18 U.S.C. §2701**

**Against All Defendants**

</div>

9    92.    Plaintiff incorporates the above allegations by reference as though fully set forth

10   herein.

11   93.    The Stored Communications Act prohibits persons from accessing without

12   authorization a device through which an electronic communications service is provided (18

13   U.S.C. §2701).

14   94.    Defendants were engaged in the sale of mobile devices to consumers during the

15   class period.

16   95.    Defendants intentionally accessed and collected the personal data of Plaintiff

17   and Class Members on their mobile devices without notice or authorization, including

18   incoming text messages, URLs of websites viewed and GPS coordinates.

19   96.    As a result of Defendants' unlawful violation of this section, Plaintiff and Class

20   Members have been damaged by among other things, failing to receive the benefits of a

21   product impliedly represented to them as secure as to their personal information. Plaintiff and

22   Class Members have additionally suffered loss by reason of these violations, including

23   violation of their rights of privacy. Defendants exposed Plaintiff's and Class Members'

24   personal information to any third party software or application with log file access residing on

25   their mobile devices without Plaintiff's or Class Members' permission or knowledge, and in an

26   unencrypted form. Plaintiff and Class Members were damaged by Defendants' unauthorized

27   use of the resources of Plaintiff's and Class Members' mobile devices including battery power,

28   cell phone memory, CPUs, and bandwidth. Moreover, Plaintiff and Class Members had

<div align="center">

CLASS ACTION COMPLAINT
-26-

</div>

1 | unauthorized charges to their mobile devices for every hidden text message that was sent by

2 | Defendants.

3 |     97.    Plaintiff and Class Members have been harmed by Defendants' unlawful

4 | violations of this section and are therefore entitled to relief in the form of damages, costs and

5 | disbursements, including costs of investigation and reasonable attorney's fees and are entitled

6 | to equitable relief as determined by this Court.

7 | <center>**THIRD CAUSE OF ACTION**</center>

8 | <center>**Violation of the Consumer Legal Remedies Act**</center>

9 | <center>**("CLRA") California Civil Code § 1750, *et seq.***</center>

10 | <center>**Against All Defendants**</center>

11 |     98.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

12 |     99.    In violation of Civil Code §1750, et seq. (the "CLRA"), Defendants have

13 | engaged and are engaging in unfair and deceptive acts and practices in the course of

14 | transactions with Plaintiff, and such transactions are intended to and have resulted in the sales

15 | of services to consumers. Plaintiff and Class Members are "consumers" as that term is used in

16 | the CLRA because they sought or acquired Defendants' goods or services for personal, family,

17 | or household purposes.

18 |     100.    At all relevant times, Defendants' business practices of selling Pantech mobile

19 | devices installed or updated with IQ Agent software, were goods Plaintiff and Class Members

20 | obtained for use. Defendants' scheme to offer such goods misled Plaintiff and Class Members

21 | about the nature and integrity of the Pantech mobile devices since Defendants intended to use

22 | such for mobile device tracking, collection of confidential, unencrypted user data, and

23 | depletion of consumer resources, including battery power, device memory, CPUs, and

24 | bandwidth. Defendants also charged consumers for every hidden text message that was sent by

25 | Defendants.

26 |     101.    Defendants represented that their services had characteristics, uses, and benefits

27 | that they do not have, in violation of Civil Code § 1770(a)(5). Defendants represented privacy

28 | and "reliable, worry-free service" as a characteristic of the mobile devices that they did not

1   have. Defendants intercepted and collected Plaintiff's and Class Members' electronic

2   communications which included incoming text messages, URLs of websites viewed and GPS

3   coordinates from within their mobile devices. Once Defendants obtained this personal

4   information, Defendants used it to aggregate mobile device data of Plaintiff and Class

5   Members as they used their mobile device. Defendants made this personal information

6   available, unencrypted, to any third party software or applications with log file access on the

7   device and further violated Plaintiff's and Class Members' privacy.

8         102. In addition, Defendants' modus operandi constitutes an unfair practice in that

9   Defendants knew, or should have known, that consumers care about the status of personal

10   information regarding visited websites, GPS location and text privacy but were unlikely to be

11   aware of the manner in which Defendants failed to fulfill their commitments with respect to the

12   consumers' privacy.

13         103. Defendants' acts and practices were deceptive and unfair because they were

14   likely to mislead the members of the public to whom they were directed.

15         104. Plaintiff and Class Members have suffered loss by reason of these violations,

16   including, without limitation, violation of the right of privacy. Defendants exposed Plaintiff's

17   and Class Members' personal information to any third party software or application with log

18   file access residing on their mobile devices without Plaintiff's or Class Members' permission

19   or knowledge, and in an unencrypted form. Plaintiff and Class Members were damaged by

20   Defendants' unauthorized use of the resources of Plaintiff's and Class Members' mobile

21   devices including battery power, cell phone memory, CPUs, and bandwidth. Moreover,

22   Plaintiff and Class Members had unauthorized charges to their mobile devices for every hidden

23   text message that was sent by Defendants.

24         105. Plaintiff, on behalf of himself and on behalf of each member of the Class, shall

25   seek individual restitution, injunctive relief, and other relief as the Court deems just and proper.

26         106. Pursuant to California Civil Code, Section 1782, Plaintiff will notify Defendants

27   in writing of the particular violations of Civil Code, Section 1770 and demand that Defendants

28   rectify the problems associated with its behavior detailed above, which acts and practices are in

1  violation of Civil Code Section 1770.

2  ### FOURTH CAUSE OF ACTION

3  **Violation of Unfair Competition California Business and Professions Code § 17200**

4  **Against All Defendants**

5  107.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

6  108.   In violation of California Business and Professions Code Section 17200 et seq.,

7  Defendants' conduct in this regard is ongoing and includes, but is not limited to, unfair,

8  unlawful and fraudulent conduct.

9  109.   At all relevant times, Defendants' business practices as alleged above constitute

10  unlawful, unfair and fraudulent business acts and practices.

11  110.   Defendants engaged in these unfair and fraudulent practices to increase their

12  profits. Plaintiff and Class Members were injured and damaged by being forced to relinquish—

13  without consent or knowledge—confidential and personal user data, device battery power,

14  device memory, CPUs, and bandwidth. Plaintiff and Class Members were also unfairly charged

15  for every hidden text message that was sent by Defendants.

16  111.   By engaging in the above-described acts and practices, Defendants have

17  committed one or more acts of unfair competition within the meaning of the UCL and, as a

18  result, Plaintiff and the Class have suffered injury-in-fact and have lost money and/or property.

19  A. **Unlawful Business Act and Practices**

20  112.   Defendants' business acts and practices are unlawful, in part, because they

21  violate the Electronic Communications Privacy Act, 18 U.S.C. Section 2510 which prohibits

22  any person from willfully intercepting or endeavoring to intercept, or procuring any other

23  person to intercept or endeavor to intercept, any wire, oral, or electronic communication,

24  including incoming text messages.

25  113.   Defendants' business acts and practices are also unlawful in that they violate the

26  Stored Communications Act, 18 U.S.C. Section 2701, California Consumer Legal Remedies

27  Act, California Civil Code §1750, and California Penal Code, § 502 among other statutes.

28  B. **Unfair Business Act and Practices**

1     114.  Defendants' business acts and practices are unfair because they cause harm and

2  injury-in-fact to Plaintiff and Class Members and for which Defendants have no justification

3  other than to increase revenues from the unauthorized use of personal information

4     115.  Defendants' conduct lacks reasonable and legitimate justification in that

5  Defendants have benefited from such conduct and practices while Plaintiff and the Class

6  Members have been misled as to the nature and integrity of Defendants' services and have, in

7  fact, suffered injury regarding the privacy and confidentiality of their personal information and

8  the use of their device resources. Defendants' conduct offends public policy in California in

9  connection with the Consumer Legal Remedies Act, the state constitutional right of privacy,

10  and California statutes recognizing the need for consumers to safeguard their own privacy

11  interests, including California Civil Code, Section 1798.80.

12     116.  In addition, Defendants' actions constitute an unfair practice in that Defendants

13  knew, or should have known, that consumers care about the status of personal information

14  regarding visited websites, GPS location and text privacy but were unlikely to be aware of the

15  manner in which Defendants failed to fulfill their commitments with respect to the consumers'

16  privacy.

17     117.  Defendants' acts and practices were fraudulent within the meaning of the Unfair

18  Competition Law because they were likely to mislead the consumers.

19     118.  Defendants' practice of capturing, storing, and transferring highly detailed and

20  personal records of consumers' incoming text messages, URLs of websites visited and GPS

21  location histories, and storing such information in unencrypted form, is in violation of the

22  Unfair Competition Law. Plaintiff and Class Members have suffered loss by reason of these

23  violations, including, violation to their right of privacy.  Defendants exposed Plaintiff's and

24  Class Members' personal information to any third party software or applications with log file

25  access residing on their mobile devices without Plaintiff's or Class Members' consent or

26  knowledge, and in an unencrypted form. Plaintiff and Class Members were damaged by

27  Defendants' unauthorized use of the resources of Plaintiff's and Class Members' mobile

28  devices including battery power, cell phone memory, CPUs, and bandwidth. Moreover,

1   Plaintiff and Class Members had to pay unauthorized charges to their mobile devices for every

2   hidden text message that was sent by Defendants.

<div align="center">

**FIFTH CAUSE OF ACTION**

**Violation of California's Computer Crime Law**

**Penal Code § 502 et seq.**

**Against All Defendants**

</div>

7       119.   Plaintiff incorporates the above allegations by reference as if set forth herein at

8   length.

9       120.   The California Computer Crime Law, California Penal Code Section 502

10   regulates "tampering, interference, damage, and unauthorized access to lawfully created

11   computer data and computer systems." A mobile device is a "computer system" as defined in

12   Penal Code Section 502(b)(5) in that it contains electronic instructions, inputs and outputs data,

13   performs functions including communication and data storage and retrieval.

14       121.   Defendants violated California Penal Code § 502 by knowingly accessing,

15   copying, using, making use of, interfering, and/or altering, data belonging to Plaintiff and Class

16   Members: (1) in and from the State of California; (2) in the home states of the Plaintiff and

17   Class Members; and (3) in the state in which the servers that provided the communication link

18   between Plaintiff and Class Members and the applications they interacted with were located.

19       122.   At all relevant times, Defendants had a business practice of accessing Plaintiff's

20   and Class Members' mobile devices on a systematic and continuous basis in order to obtain

21   mobile device data and to monitor and collect data related to their browsing habits, GPS

22   locations and incoming text messages. Defendants accessed such data without notice to or

23   authorization from Plaintiff or Class Members.

24       123.   Pursuant to California Penal Code § 502(b)(1), "Access means to gain entry to,

25   instruct, or communicate with the logical, arithmetical, or memory function resources of a

26   computer, computer system, or computer network."

27       124.   Pursuant to California Penal Code § 502(b)(6), "Data means a representation of

28   information, knowledge, facts, concepts, computer software, computer programs or

1   instructions. Data may be in any form, in storage media, or as stored in the memory of the

2   computer or in transit or presented on a display device."

3     125. Defendants have violated California Penal Code § 502(c)(1) by knowingly

4   accessing and without permission, altering, and making use of data from Plaintiff's and Class

5   Members' mobile devices in order to devise and execute business practices to deceive Plaintiff

6   and Class Members into surrendering private electronic communications, and to wrongfully

7   obtain valuable private data and device resources from Plaintiff and Class Members.

8     126. Defendants have violated California Penal Code § 502(c)(2) by knowingly

9   accessing and without permission, taking, or making use of data from Plaintiff's and Class

10   Members' mobile devices.

11     127. Defendants have violated California Penal Code § 502(c)(3) by knowingly and

12   without permission, using and causing to be used Plaintiff's and Class Members' mobile

13   computing devices' services and resources.

14     128. Defendants have violated California Penal Code section 502(c)(4) by knowingly

15   accessing and, without permission, adding and/or altering the data from Plaintiff's and Class

16   Members' computers, including application code installed on such computers.

17     129. Defendants have violated California Penal Code § 502(c)(6) by knowingly and

18   without permission providing, or assisting in providing, a means of accessing Plaintiff's and

19   Class Members' mobile devices and mobile device systems.

20     130. Defendants has violated California Penal Code § 502(c)(7) by knowingly and

21   without permission accessing, or causing to be accessed, Plaintiff's and Class Members'

22   mobile devices and mobile device systems.

23     131. California Penal Code § 502(j) states: "For purposes of bringing a civil or a

24   criminal action under this section, a person who causes, by any means, the access of a

25   computer, computer system, or computer network in one jurisdiction from another jurisdiction

26   is deemed to have personally accessed the computer, computer system, or computer network in

27   each jurisdiction."

28     132. Plaintiff and Class Members have suffered loss by reason of these violations,

1    including, without limitation, violation of the right of privacy. Defendants exposed Plaintiff's

2    and Class Members' personal information to any third party software or application with log

3    file access residing on their mobile devices without Plaintiff's or Class Members' permission

4    or knowledge, and in an unencrypted form. Plaintiff and Class Members were damaged by

5    Defendants' unauthorized use of the resources of Plaintiff's and Class Members' mobile

6    devices including battery power, cell phone memory, CPUs, and bandwidth. Plaintiff and Class

7    Members had unauthorized charges to their mobile devices for every hidden text message that

8    was sent by Defendants.

9        133.   Plaintiff and Class Members have also suffered irreparable injury from these

10   unauthorized acts of disclosure, to wit: their personal, private, and sensitive electronic data was

11   obtained and used by Defendant. Due to the continuing threat of such injury, Plaintiff and

12   Class Members have no adequate remedy at law, entitling Plaintiff and the Class to injunctive

13   relief.

14       134.   Plaintiff and Class Members have additionally suffered loss by reason of these

15   violations, including, without limitation, violation of the right of privacy and depletion of

16   valuable device resources.

17       135.   As a direct and proximate result of Defendants' unlawful conduct within the

18   meaning of California Penal Code § 502, Defendants have caused loss to Plaintiff and Class

19   Members in an amount to be proven at trial. Plaintiff and Class Members are also entitled to

20   recover their reasonable attorneys' fees pursuant to California Penal Code § 502(e).

21       136.   Plaintiff and the Class Members seek compensatory damages, in an amount to

22   be proven at trial, and injunctive or other equitable relief.

### SIXTH CAUSE OF ACTION

### Violation of the California Invasion of Privacy Act

### Penal Code § 630 et seq.

### Against All Defendants

27       137.   Plaintiff incorporates the above allegations by reference as if set forth herein at

28   length.

138.    California Penal Code Section 630 provides, in part:

> Any person who, . . . or who willfully and without the consent of
> all parties to the communication, or in any unauthorized manner,
> reads, or attempts to read, or to learn the contents or meaning of
> any message, report, or communication while the same is in
> transit or passing over any wire, line, or cable, or is being sent
> from, or received at any place within this state; or who uses, or
> attempts to use, in any manner, or for any purpose, or to
> communicate in any way, any information so obtained, or who
> aids, agrees with, employs, or conspires with any person or
> persons to unlawfully do, or permit, or cause to be done any of
> the acts or things mentioned above in this section, is punishable. .
> . .

139.    At all relevant times, Defendants engaged in a business practice of accessing the
mobile device data of the Plaintiff and Class Members without their authorization and consent
and systematically logging and collecting their incoming text messages, URLs of websites
viewed and GPS coordinates. Defendants made this personal data available to all third party
software or applications with log file access on the mobile devices of Plaintiff and Class
Members in an unencrypted form, without the consent or authorization of Plaintiff or Class
Members.

140.    On information and belief, Plaintiff and each Class Member, during one or more
of their interactions on their mobile device, including receipt of text messages and URL
browsing, communicated with one or more web entities based in California, or with one or
more entities whose servers were located in California.

141.    Communications from the California web-based entities to Plaintiff and Class
Members were sent from California. Communications to the California web-based entities
from Plaintiff and Class Members were sent to California.

142.    Plaintiff and Class Members did not consent to any of the Defendants' actions
in intercepting, reading, and/or learning the contents of their communications with such
California-based entities.

143.    Plaintiff and Class Members did not consent to any of the Defendants' actions
in using the contents of their communications with such California-based entities.

1    144.   Neither Defendant is a " public utility engaged in the business of providing

2 communications services and facilities . . .."

3    145.   The actions alleged herein by the Defendants were not undertaken "for the

4 purpose of construction, maintenance, conduct or operation of the services and facilities of the

5 public utility."

6    146.   The actions alleged herein by the Defendants were not undertaken in connection

7 with "the use of any instrument, equipment, facility, or service furnished and used pursuant to

8 the tariffs of a public utility."

9    147.   The actions alleged herein by Defendants were not undertaken with respect to

10 any telephonic communication system used for communication exclusively within a state,

11 county, city and county, or city correctional facility.

12    148.   Defendants directly participated in intercepting, reading, and/or learning the

13 contents of the communications between Plaintiff, Class Members and California-based web

14 entities.

15    149.   Alternatively, and of equal violation of the California Invasion of Privacy Act,

16 Pantech aided, agreed with, and/or conspired with Carrier IQ to unlawfully do, or permit, or

17 cause to be done all of the acts complained of herein.

18    150.   Plaintiff and Class Members have additionally suffered loss by reason of these

19 violations, including, without limitation, violation of the right of privacy. Defendants exposed

20 Plaintiff's and Class Members' personal information to any third party software or application

21 with log file access residing on their mobile devices without Plaintiff's or Class Members'

22 permission or knowledge, and in an unencrypted form. Plaintiff and Class Members were

23 damaged by Defendants' unauthorized use of the resources of Plaintiff's and Class Members'

24 mobile devices including battery power, cell phone memory, CPUs, and bandwidth. Moreover,

25 Plaintiff and Class Members had unauthorized charges to their mobile devices for every hidden

26 text message that was sent by Defendants.

27    151.   Unless restrained and enjoined, Defendants will continue to commit such acts.

28 Pursuant to § 637.2 of the California Penal Code, Plaintiff and the Class have been injured by

1 | the violations of California Penal Code Section 631. Wherefore, Plaintiff, on behalf of himself

2 | and on behalf of a similarly situated Class of consumers, seeks damages and injunctive relief.

### SEVENTH CAUSE OF ACTION

**Violation of the Song-Beverly Warranty Act, California Civil Code §1792**

**Against All Defendants**

6 | 152.  Plaintiff incorporates by reference the allegations contained in all the

7 | paragraphs of this Complaint.

8 | 153.  Pantech warranted to Plaintiff and Class Members in its "Manufacturer's

9 | Warranty" that the mobile devices would be free from defects for normal consumer usage for

10 | twelve months from the date of purchase.

11 | 154.  Pantech by offering mobile devices in the marketplace represented and

12 | warranted to Plaintiff and Class Members that these devices did not cause personal information

13 | to be unreasonably and unexpectedly transferred to third parties.

14 | 155.  Plaintiff and Class Members paid more for their mobile devices than they would

15 | have paid if Pantech disclosed the fact that the mobile devices were designed with defects,

16 | namely the privacy breach to Carrier IQ and any other third party software on the mobile

17 | device.

18 | 156.  A reasonable consumer would, and Plaintiff and Class Members did expect that,

19 | if Pantech mobile devices were subject to defects such as those identified above, Pantech

20 | would disclose these material facts and Plaintiff and Class Members would not have purchased

21 | these devices.

22 | 157.  Plaintiff and Class Members paid premiums for Pantech mobile devices because

23 | they reasonably believed the devices were designed to employ reasonable security in their

24 | operation.

25 | 158.  Pantech's failure to meet the specifications of the mobile devices violates the

26 | express and implied warranties under the Song-Beverly Warranty Act, California Civil Code

27 | §1792 et.seq.

28 | 159.  Moreover, Pantech asserts that disabling the Carrier IQ software on a mobile

1  device voids the Pantech Warranty. Plaintiff and Class Members are therefore forced to induce

2  breach of the Pantech Warranty by disabling the Carrier IQ software to protect their personal

3  information.

4  160.   Plaintiff and Class Members who purchased the mobile devices are entitled to a

5  refund of the purchase price.

### EIGHTH CAUSE OF ACTION

### Texas Deceptive Trade Practices Act, Business and Commerce

### Code § 17.41 et seq.

### Against All Defendants

10  161.   Plaintiff incorporates by reference the allegations contained in all of the

11  preceding paragraphs of this complaint.

12  162.   Plaintiff is a "consumer" under the Texas Deceptive Trade Practices Act as he

13  purchased and used a Pantech mobile device that had been preinstalled with the Carrier IQ

14  tracking program.

15  163.   Defendants are proper "persons" or defendants under the Texas Deceptive

16  Trade Practices Act, who either used or employed false, misleading, deceptive or

17  unconscionable acts or practices, or were directly connected with the transaction with Plaintiff.

18  164.   Defendants committed multiple violations and wrongful acts under the Texas

19  Deceptive Trade Practices Act, including the following: making or committing, false,

20  misleading or deceptive acts and/or practices, including but not limited to violations of Tex.

21  Business & Commerce Code § 17.46(b) (3), (5), (7), (9), (20), and (24). Defendants committed

22  misleading and unconscionable acts in connection with the sale of mobile devices installed or

23  updated with IQ Agent to Plaintiff and Class Members, and the subsequent tracking and

24  logging of Plaintiff's and Class Members' confidential, unencrypted through IQ Agent without

25  notice or consent. In carrying out these acts, Defendants depleted Plaintiff's and Class

26  Members' mobile device resources without notice to or consent from Plaintiff or Class

27  Members. Plaintiff and Class Members relied on Defendants' acts and/or practices to their

28  detriment.

165. Plaintiff and Class Members will show that the violation and actions of Defendants were a producing cause of their damages. Defendants exposed Plaintiff's and Class Members' personal information to any third party software or applications with log file access residing on their mobile devices without Plaintiff's or Class Members' permission or knowledge, and in an unencrypted form. Plaintiff and Class Members were damaged by Defendants' unauthorized use of Plaintiff's and Class Members' mobile device resources including battery power, cell phone memory, CPUs, and bandwidth. Moreover, Plaintiff and Class Members had unauthorized charges to their mobile devices for every hidden text message that was sent by Defendants.

166. Plaintiff will show that the violations and actions of Defendants were done intentionally or knowingly, entitling Plaintiff to treble damages.

167. Plaintiff will show that the violations and actions of Defendants entitle him to reasonable and necessary attorney's fees under the Texas Deceptive Trade Practices Act, specifically Tex. Business & Commerce Code § 17.50(d).

<div align="center">

**NINTH CAUSE OF ACTION**

**Breach of Express Warranty**

**Against Defendant Pantech**

</div>

168. Plaintiff incorporates by reference the allegations contained in all the paragraphs of this Complaint.

169. Pantech warranted to Plaintiff and Class Members in its "Manufacturer's Warranty" that the mobile devices would be free from defects for normal consumer usage for twelve months from the date of purchase.

170. Pantech sold mobile devices to Plaintiff and Class Members that were defective because they caused personal information to be unreasonably and unexpectedly viewed and collected by Carrier IQ and other third party software and applications. The devices also were subject to depletion of resources through the IQ Agent software which depleted those resources without notice to or authorization from Plaintiff or Class Members.

171. Plaintiff and Class Members paid more for their mobile devices than they would

1   have paid if Pantech disclosed the fact that the mobile devices were designed with defects,

2   namely the privacy breach and depletion of mobile device resources.

3       172.   A reasonable consumer would, and Plaintiff and Class Members did expect that,

4   if Pantech mobile devices were subject to defects such as those identified above, Pantech

5   would disclose these material facts and Plaintiff and Class Members would not have purchased

6   these devices.

7       173.   Plaintiff and Class Members paid premiums for Pantech mobile devices because

8   they reasonably believed the devices were designed to employ reasonable security in their

9   operation.

10      174.   Pantech's failure to provide to Plaintiff and Class Members a mobile device that

11  is not defective is a violation of Pantech's express Warranty.

12      175.   Moreover, Pantech asserts that disabling the Carrier IQ software on a mobile

13  device voids the Pantech Warranty.  Plaintiff and Class Members are therefore forced by

14  Pantech to induce breach of the Pantech Warranty by disabling the Carrier IQ software to

15  protect their personal information.

16      176.   Plaintiff and Class Members who purchased the mobile devices are entitled to a

17  refund of the purchase price.

18                          **TENTH CAUSE OF ACTION**

19                          **Breach of Implied Warranty**

20                          **Against Defendant Pantech**

21      177.   Plaintiff incorporates by reference the allegations contained in all the

22  paragraphs of this Complaint.

23      178.   Pantech by offering mobile devices in the marketplace represented and

24  warranted to Plaintiff and Class Members that these devices would be free from defects for

25  normal consumer usage and would not cause personal information to be unreasonably and

26  unexpectedly transferred to third parties.

27      179.   Pantech by sold mobile devices to Plaintiff and Class Members that were

28  defective because they caused personal information to be unreasonably and unexpectedly

1    viewed and collected by Carrier IQ and other third party software and applications. The

2    devices also were subject to depletion of resources through the IQ Agent software which

3    depleted those resources without notice to or authorization from Plaintiff or Class Members.

4         180.   Plaintiff and Class Members paid more for their mobile devices than they would

5    have paid if Pantech disclosed the fact that the mobile devices were designed with defects,

6    namely the privacy breach and depletion of mobile device resources.

7         181.   A reasonable consumer would, and Plaintiff and Class Members did expect that,

8    if Pantech mobile devices were subject to defects such as those identified above, Pantech

9    would disclose these material facts and Plaintiff and Class Members would not have purchased

10   these devices.

11        182.   Plaintiff and Class Members paid premiums for Pantech mobile devices because

12   they reasonably believed the devices were designed to employ reasonable security in their

13   operation.

14        183.   Pantech's failure to provide to Plaintiff and Class Members are therefore forced

15   by Pantech to induce breach of the Pantech Warranty by disabling the Carrier IQ software to

16   protect their personal information.

17        184.   Pantech by offering mobile devices in the marketplace represented and

18   warranted to Plaintiff and Class Members that these devices would be free from defects for

19   normal consumer usage and would not cause personal information to be unreasonably and

20   unexpectedly transferred to third parties.

21        185.   Pantech sold mobile devices to Plaintiff and Class Members that were defective

22   because they caused personal information to be unreasonably and unexpectedly viewed and

23   collected by Carrier IQ and other third party software and applications. The devices also were

24   subject to depletion of resources through the IQ Agent software which depleted those resources

25   without notice to or authorization from Plaintiff or Class Members.

26        186.   Plaintiff and Class Members paid more for their mobile devices than they would

27   have paid if Pantech disclosed the fact that the mobile devices were designed with defects,

28   namely the privacy breach and depletion of mobile device resources.

1    187.   A reasonable consumer would, and Plaintiff and Class Members did expect that,

2    if Pantech mobile devices were subject to defects such as those identified above, Pantech

3    would disclose these material facts and Plaintiff and Class Members would not have purchased

4    these devices.

5    188.   Plaintiff and Class Members paid premiums for Pantech mobile devices because

6    they reasonably believed the devices were designed to employ reasonable security in their

7    operation.

8    189.   Pantech's failure to provide to Plaintiff and Class Members a mobile device that

9    is not defective is a violation of Pantech's implied Warranty.

10    190.   Plaintiff and Class Members who purchased the mobile devices are entitled to a

11    refund of the purchase price.

12                              **ELEVENTH CAUSE OF ACTION**

13                                      **Negligence**

14                                **Against All Defendants**

15    191.   Plaintiff incorporates the above allegations by reference as if fully set forth

16    herein.

17    192.   Carrier IQ and Pantech owed a duty of care to Plaintiff and Class Members.

18    193.   Carrier IQ and Pantech breached their duty by negligently designing IQ Agent

19    and preinstalling or uploading it to Plaintiff's and Class Members' mobile devices without any

20    notice or authorization so that Defendants could acquire personal information without

21    Plaintiff's and Class Members' knowledge or permission. Defendants also negligently made

22    this confidential data available to any software or application with log file access on the mobile

23    device, in an unencrypted format. Defendants also negligently depleted Plaintiff's and Class

24    Members' mobile device resources.

25    194.   Carrier IQ and Pantech failed to fulfill their own commitments to Plaintiff and

26    Class Members, and further failed to fulfill even the minimum duty of care to protect

27    Plaintiff's and Class Members' personal information, privacy rights, security, and device

28    resources.

1      195.    Pantech's unencrypted storage of Plaintiff's and Class Members' on the mobile

2   device log file and Carrier IQ servers was negligent.

3      196.    Plaintiff and Class Members were harmed as a result of Carrier IQ's breaches of

4   its duty, and Carrier IQ proximately caused such harms.

5      197.    Pantech's failure to fulfill its commitments included allowing Carrier IQ's

6   practice of preinstalling IQ Agent on Pantech mobile device users' devices without notice or

7   authorization and then permitting Carrier IQ to collect unencrypted data in the log file and

8   make it available, unencrypted, to third party software and applications with log file access on

9   the devices. Pantech engaged in these activities without notice to or consent from Plaintiff and

10  Class Members.

11     198.    Pantech's preinstallation or upload of IQ Agent and unauthorized use of

12  Plaintiff's and Class Members' confidential information without notice to or consent from

13  Plaintiff or Class Members was negligent.

14     199.    Defendants exposed Plaintiff's and Class Members' personal information to any

15  third party software with log file access residing on their mobile devices without Plaintiff's or

16  Class Members' permission or knowledge, and in an unencrypted form. Plaintiff and Class

17  Members were damaged by Defendants' unauthorized use of the resources of their mobile

18  devices including battery power, cell phone memory, CPUs, and bandwidth. Moreover,

19  Plaintiff and Class Members had unauthorized charges to their mobile devices for every hidden

20  text message that was sent by Carrier IQ.

21     200.    Plaintiff and Class Members were harmed as a result of Defendants' breaches of

22  their duty, and Defendants proximately caused such harms.

23                          **TWELFTH CAUSE OF ACTION**

24                       **Trespass to Personal Property/Chattels**

25                              **Against All Defendants**

26     201.    Plaintiff incorporates by reference all paragraphs previously alleged herein.

27     202.    The common law prohibits the intentional intermeddling with personal property,

28  including a mobile device, in possession of another which results in the deprivation of the use

1   of the personal property or impairment of the condition, quality, or usefulness of the personal

2   property.

3       203.   By engaging in the acts alleged in this complaint without the authorization or

4   consent of Plaintiff and Class Members, Defendants dispossessed Plaintiff and Class Members

5   from use and/or access to their mobile devices, or parts of them. Further, these acts impaired

6   the use, value, and quality of Plaintiff's and Class Members' mobile devices. Defendants' acts

7   constituted an intentional interference with the use and enjoyment of their mobile devices. By

8   the acts described above, Defendants have repeatedly and persistently engaged in trespass to

9   personal property in violation of the common law.

10       204.   Without Plaintiff's and Class Members' consent, or in excess of any consent

11   given, Defendants knowingly and intentionally accessed Plaintiff's and Class Members'

12   property, thereby intermeddling with Plaintiff's and Class Members' right to possession of the

13   property and causing injury to Plaintiff and the members of the Class.

14       205.   Defendants engaged in deception and concealment in order to gain access to

15   Plaintiff's and Class Members' mobile devices.

16       206.   Defendants undertook the following actions with respect to Plaintiff's and Class

17   Members' mobile devices:

18       207.   Defendants  accessed and obtained control over the users' mobile device;

19       208.   Defendants caused the installation of code on the hard drives of the mobile

20   devices;

21       209.   Defendants programmed the operation of its code to circumvent the mobile

22   device owners' privacy and security controls, to remain beyond their control, and to continue

23   to function and operate without notice to them or consent from Plaintiff and Class Members;

24       210.   Defendants obtained users' personal information by logging confidential data in

25   the log file;

26       211.   Defendants utilized users' mobile device resources as part of logging

27   confidential data; and

28       212.   Defendants used the log file data to obtain information about the mobile

1 | browsing activities of the mobile device without the user's consent, and outside of the control
2 | of the owner of the mobile device.

3 | 213. All these acts described above were acts in excess of any authority any user
4 | granted Defendants when the user purchased the Pantech mobile device that had IQ Agent
5 | preinstalled or updated on the device without the user's consent or knowledge. By engaging in
6 | deception and misrepresentation, whatever authority or permission Plaintiff and Class
7 | Members may have granted to Defendants was exceeded.

8 | 214. Defendants' installation and operation of its program used, interfered, and/or
9 | intermeddled with Plaintiff's and Class Members' mobile devices. Such use, interference
10 | and/or intermeddling was without Plaintiff's and Class Members' consent or, in the alternative,
11 | in excess of Plaintiff's and Class Members' consent.

12 | 215. Defendants' installation and operation of its program constitutes trespass,
13 | nuisance, and an interference with Plaintiff's and Class Members' chattels, to wit, their mobile
14 | devices.

15 | 216. Defendants' installation and operation of the Carrier IQ program impaired the
16 | condition and value of Plaintiff's and Class Members' mobile devices.

17 | 217. Defendants' trespass to chattels, nuisance, and interference caused real and
18 | substantial damage to Plaintiff and Class Members  Defendants exposed Plaintiff's and Class
19 | Members' personal information to any third party software with log file access residing on
20 | their mobile devices without Plaintiff's or Class Members' permission or knowledge, and in an
21 | unencrypted form. Plaintiff and Class Members were damaged by Defendants' unauthorized
22 | use of the resources of Plaintiff's and Class Members' mobile devices including battery power,
23 | cell phone memory, CPUs, and bandwidth.  Plaintiff and Class Members had unauthorized
24 | charges to their mobile devices for every hidden text message that was sent by Carrier IQ.

25 | 218. As a direct and proximate result of Defendants' trespass to chattels, nuisance,
26 | interference, unauthorized access of and intermeddling with Plaintiff's and Class Members'
27 | property, Defendants have injured and impaired Plaintiff and Class Members in the condition
28 | and value of Plaintiff's Class Members' mobile devices, as follows:

1        (a)    By consuming the resources of and/or degrading the performance of

2    Plaintiff's and Class Members' mobile devices (including space, memory, processing cycles,

3    Internet connectivity, and unauthorized use of their bandwidth);

4        (b)    By diminishing the use of, value, speed, capacity, and/or capabilities

5    of Plaintiff's and Class Members' mobile devices;

6        (c)    By devaluing, interfering with, and/or diminishing Plaintiff's and

7    Class Members' possessory interest in their mobile devices;

8        (d)    By altering and/or controlling the functioning of Plaintiff's and Class

9    Members' mobile devices;

10        (e)    By infringing on Plaintiff's and Class Members' right to exclude

11    others from their mobile devices;

12        (f)    By infringing on Plaintiff's and Class Members' right to determine, as

13    owners of/or their mobile devices, which programs should be installed and operating on their

14    mobile devices;

15        (g)    By compromising the integrity, security, and ownership of Class

16    Members' mobile devices; and

17        (h)    By utilizing Plaintiff's and Class Members' mobile device resources

18    without notice or consent.

19                **THIRTEENTH CAUSE OF ACTION**

20                     **Unjust Enrichment**

21                    **Against All Defendants**

22    219.   Plaintiff incorporates by reference the allegations contained in all of the

23    paragraphs of this complaint.

24    220.   By engaging in the conduct described in this Complaint, Defendants have

25    knowingly obtained benefits from the Plaintiff and Class Members under circumstances that

26    make it inequitable and unjust for Defendants to retain them.

27    221.   Plaintiff and the Class have conferred a benefit upon the Defendants who have,

28    directly or indirectly, received and retained the confidential information of Plaintiff and Class

1   Members as set forth herein. Defendants have received and retained information that is

2   otherwise private, confidential, and not of public record, and/or have received revenue from the

3   provision, use, and or trafficking in the sale of such information.

4        222.   Defendants appreciate and/or have knowledge of said benefit.

5        223.   Under principles of equity and good conscience, Defendants should not be

6   permitted to retain the information and/or revenue that they acquired by virtue of their

7   unlawful conduct. All funds, revenue, and benefits received by them rightfully belong to

8   Plaintiff and the Class, which the Defendants have unjustly received as a result of their actions.

9        224.   Plaintiff and Class Members have no adequate remedy at law.

10        225.   Defendants have received a benefit from Plaintiff and Class Members and

11   Defendants have received and retained money or other benefits from third parties as a result of

12   sharing Plaintiff's and Class Members' confidential information of Plaintiff and Class

13   Members without Plaintiff's or Class Members' knowledge or consent as alleged in this

14   Complaint.

15        226.   Plaintiff and Class Members did not expect that Defendants would seek to gain

16   commercial or business advantage from third parties by using their personal information

17   without their knowledge or consent.

18        227.   Defendants knowingly used Plaintiff's and Class Members' confidential

19   information without their knowledge or consent to gain commercial advantage from third

20   parties and had full knowledge of the benefits they have received from Plaintiff and Class

21   Members. If Plaintiff and Class Members had known Defendants were not keeping their

22   confidential information from third-parties, they would not have consented and Defendants

23   would not have gained commercial or business advantage from third parties.

24        228.   Defendants will be unjustly enriched if Defendants are permitted to retain the

25   money or other benefits paid to them by third parties, or resulting from the commercial or

26   business advantage they gained, in exchange for Plaintiff's and Class Members' confidential

27   information.

28        229.   Defendants should be required to provide restitution of all money obtained from

1   their unlawful conduct.

2       230.   Plaintiff and the Members of the Class are entitled to an award of compensatory

3   and punitive damages in an amount to be determined at trial or to be imposition of a

4   constructive trust upon the wrongful revenues and/or profits obtained by and benefits conferred

5   upon Defendants as a result of the wrongful actions as alleged in this complaint.

6       231.   Plaintiff and the Class have no remedy at law to prevent Defendants from

7   continuing the inequitable conduct alleged in this complaint and the continued unjust retention

8   of the money and/or benefits Defendants received from third parties.

9                     **FOURTEENTHCAUSE OF ACTION**

10                             **Conversion**

11                       **Against All Defendants**

12       232.   Plaintiff incorporates by reference the allegations contained in all of the

13   preceding paragraphs of this complaint.

14       233.   Plaintiff's and Class Members' mobile device data, including but not limited to

15   their incoming text messages, URLs of websites viewed and GPS coordinates, was viewed by

16   Defendants and made available to third party software and applications with log file permission

17   to collect confidential, unencrypted data about Plaintiff's and Class Members' mobile device

18   activities. Such property, owned by the Plaintiff and Class Members, is valuable to the Plaintiff

19   and Class Members.

20       234.   Plaintiff's and Class Members' mobile devices use battery power, cell phone

21   memory, CPUs, and bandwidth. Defendants' activities, made the basis of this action, used

22   without notice or authorization, such battery power, memory, CPU and bandwidth for purposes

23   not contemplated and not agreed to by Plaintiff and Class Members when they purchased their

24   Pantech mobile devices. Such property, owned by Plaintiff and Class Members, is valuable to

25   Plaintiff and Class Members. Plaintiff and Class Members were damaged by Defendants'

26   unauthorized use of Plaintiff's and Class Members' battery power, cell phone memory and

27   CPUs, as well as bandwidth. Moreover, Defendants utilized Plaintiff's and Class Members'

28   limited text messages in order to send secret and unauthorized instructions to their mobile

1 devices. Plaintiff and Class Members paid unauthorized charges for every hidden text message

2 that was sent by Defendants.

3     235. Defendants unlawfully exercised dominion over said property and thereby

4 converted Plaintiff's and Class Members' property.

5     236. Plaintiff and Class Members were damaged by Defendants' actions.

6

7                               **PRAYER FOR RELIEF**

8     WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays

9 for judgment against Defendants as follows:

10     A.    Certify this case as a Class action on behalf of the Classes defined above,

11 appoint Plaintiff as a Class representative, and appoint his counsel as Class counsel;

12     B.    Declare that the actions of Defendants, as set out above, violate the claims

13 alleged;

14     C.    Award injunctive and equitable relief including, *inter alia*: (i) prohibiting

15 Defendants from engaging in the acts alleged above; (ii) requiring Defendants to disgorge all

16 of their ill-gotten gains to Plaintiff and Class Members, or to whomever the Court deems

17 appropriate; (iii) requiring Defendants to delete all data surreptitiously or otherwise collected

18 data through the acts alleged above; (iv) requiring Defendants to provide Plaintiff and Class

19 Members a means to easily and permanently decline any participation in any data collection

20 activities; (v) awarding Plaintiff and Class Members full restitution of all benefits wrongfully

21 acquired by Defendants by means of the wrongful conduct alleged herein; and (vi) ordering an

22 accounting and constructive trust imposed on the data, funds, or other assets obtained by

23 unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment

24 of such assets by Defendants;

25     D.    Award damages, including statutory damages where applicable, to Plaintiff and

26 Class Members in an amount to be determined at trial;

27     E.    Award restitution against Defendants for all money to which Plaintiff and the

28 Classes are entitled in equity;

1    F.    Restrain Defendants, their officers, agents, servants, employees, and attorneys,

2  and those in active concert or participation with them from continued access, collection, and

3  transmission of Plaintiff's and Class Members' confidential user data via preliminary and

4  permanent injunction;

5    G.    Award Plaintiff and the Classes:

6        (a)        Compensatory damages sustained by Plaintiff and all others

7  similarly situated as a result of Defendants' unlawful acts and conduct;

8        (b)        Restitution, disgorgement and/or other equitable relief as the

9  Court deems proper;

10        (c)        Plaintiff's reasonable litigation expenses and attorneys' fees;

11        (d)        Pre- and post-judgment interest, to the extent allowable;

12        (e)        Statutory damages, including punitive damages; and

13        (f)        Permanent injunction prohibiting Defendants from engaging

14  in the conduct and practices complained of herein.

15  For such other and further relief as this Court may deem just and proper.

16  Dated this 11th day of January, 2012.

17

18  By:

19  STRANGE & CARPENTER

20  Brian R. Strange (Cal. Bar. No. 103252)
    LACounsel@earthlink.net
21  12100 Wilshire Boulevard, Suite 1900
    Los Angeles, CA 90025
22  Telephone: (310) 207-5055
    Facsimile: (310) 826-3210

23
    Law Office of Joseph H. Malley
24  Joseph H. Malley (not admitted)
    malleylaw@gmail.com
25  1045 North Zang Blvd
    Dallas, TX 75208
26  Telephone: (214) 943-6100

27  *Counsel for Plaintiff and the Proposed Class*

28

**JURY TRIAL DEMAND**

The Plaintiff hereby demands a trial by jury of all issues so triable.

Dated this 11th day of January, 2012.



By: _____

STRANGE & CARPENTER

Brian R. Strange (Cal. Bar. No. 103252)
LACounsel@earthlink.net
12100 Wilshire Boulevard, Suite 1900
Los Angeles, CA 90025
Telephone: (310) 207-5055
Facsimile: (310) 826-3210

Law Office of Joseph H. Malley
Joseph H. Malley (not admitted)
malleylaw@gmail.com
1045 North Zang Blvd
Dallas, TX 75208
Telephone: (214) 943-6100

*Counsel for Plaintiff and the Proposed Class*